CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
August 20, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ZACHARY MONTGOMERY SEYMOUR,) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ) <br> SOUTHWEST VIRGINIA REGIONAL ) <br> JAIL AUTHORITY, et al., ) <br> Defendants. ) | Case No. 7:24-cv-00377 <br><br> By: Michael F. Urbanski <br> Senior United States District Judge |

## MEMORANDUM OPINION

Zachary Montgomery Seymour, an inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against the Southwest Virginia Regional Jail Authority and three members of the medical staff at the regional jail in Haysi, Virginia: Nurse Practitioner Crystal Large, Nurse Lynette Owens, and Nurse Diane Yates (collectively, the "medical defendants"). The jail authority and the medical defendants have moved to dismiss Seymour's amended complaint under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 40 and 42. For the reasons set forth below, the court will grant the motions to dismiss and permit Seymour to file a second amended complaint.

### I. Background

According to the amended complaint and an attached exhibit, Seymour was arrested on April 12, 2024, after providing a urine screen that tested positive for methamphetamine, THC, and buprenorphine. See Am. Compl., ECF No. 25, at 2; Am. Compl. Attach., ECF No. 25-1, at 4. At the time of the urine screen, Seymour was on probation for convictions in Lee County Circuit Court, and his probation officer charged him with violating the condition

prohibiting him from unlawfully using, possessing, or distributing controlled substances. Am. Compl. Attach. at 4.

After being arrested, Seymour was placed in a holding cell at the regional jail in Haysi. Am. Compl. at 2. The following day, his wife brought his prescription for Suboxone[1] to the jail. Id. Nurse Owens subsequently administered a drug screen and informed Seymour and Nurse Practitioner Large that Seymour did not have Suboxone in his system. Id. Seymour alleges that the negative test result was false and that he asked Owens and Nurse Yates to test him again to prove that he had Suboxone in his system. Id. at 5. Owens and Yates declined to administer another drug screen and informed him that he was "being added to the provider['s] list" for them to "triage as appropriate." Id.

Seymour asserts that the probation violation report attached to his complaint shows that he had Suboxone in his system at the time of his arrest, since it reports that a "urine screen was positive for buprenorphine." Compl. Attach. at 4. Because Nurse Yates told Nurse Practitioner Large that his drug screen was negative for Suboxone, Seymour "was denied [his] medication." Compl. at 5. Seymour claims that his constitutional rights were violated as a result of being taken off the "medication that a doctor had [him] on." Id. at 5–6. He alleges that he experienced "immediate withdraw[al] and pain" and ultimately became "suicidal and very depressed." Id. at 5.

---

[1] Suboxone is "a medication designed to reduce opioid withdrawal symptoms and the desire to use opioids." United States v. Brizuela, 962 F.3d 784, 787 (4th Cir. 2020). "Suboxone is a Class III controlled substance because it contains buprenorphine, another habit-forming opioid." Id. (citing 21 C.F.R. § 1308.13(e)(2)); see also United States v. Elliott, 110 F.4th 974, 978 n.3 (7th Cir. 2024) ("The primary drug component in Suboxone is Buprenorphine, a Schedule IIII controlled substance.").

2

## II. Standard of Review

The jail authority and the medical defendants have moved to dismiss Seymour's amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). While "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal quotation marks and brackets omitted). Additionally, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted).

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th

3

Cir. 2020). A complaint filed by a pro se plaintiff "still must contain enough facts to state a claim for relief that is plausible on its face." Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

### III. Discussion

Seymour filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The statute "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

**A.  Medical Defendants**

The court construes the amended complaint to allege that Nurse Owens, Nurse Yates, and Nurse Practitioner Large acted with deliberate indifference to his serious medical needs. The standard that applies to such claim depends on whether Seymour was a convicted prisoner or a pretrial detainee at the time of the events at issue. A convicted prisoner's claim of deliberate indifference is brought pursuant to the Eighth Amendment's prohibition of cruel and unusual punishment, while a pretrial detainee's claim of deliberate indifference is brought pursuant to the Due Process Clause of the Fourteenth Amendment. Stevens v. Holler, 68 F.4th 921, 930–31 (4th Cir. 2023). Neither the Supreme Court nor the United States Court of

4

Appeals for the Fourth Circuit has expressly decided whether an individual detained for an alleged probation violation should be treated as a pretrial detainee or a convicted prisoner, and "courts across the country have grappled with the difficulty of this question." Bond v. Moore, 672 F. Supp. 3d 357, 368 (E.D. Ky. 2023) (collecting cases); see also Brown v. Harris, 240 F.3d 383, 389 (4th Cir. 2001) (recognizing that there was "some uncertainty about whether [an individual being held on a probation violation] was a pretrial detainee or a convicted prisoner" and declining to decide the issue); Valentine v. PrimeCare Med., Inc., 697 F. Supp. 3d 431, 442 (D. Md. 2023) (noting that it is "not clear under 4th Circuit precedent which Amendment protects [an alleged probation violator]"). Because the issue is unsettled, the court will examine Seymour's allegations under both standards.

"An Eighth Amendment claim for deliberate indifference to serious medical needs includes objective and subjective elements." Mays v. Sprinkle, 992 F.3d 295, 300 (4th Cir. 2021). A plaintiff must plausibly allege that the defendant "acted with 'deliberate indifference' (the subjective component) to the plaintiff's 'serious medical needs' (the objective component)." Gordon v. Schilling, 937 F.3d 348, 356 (4th Cir. 2019) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "An official is deliberately indifferent to an inmate's serious medical needs [in violation of the Eighth Amendment] only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 925, 837 (1994)). "[I]t is not enough to show that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Id. "That is a higher standard for culpability

than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." Id. Likewise, "[a]n inmate's disagreement with the testing and treatment he has received . . . does not rise to the level of an Eighth Amendment violation." Rhinehart v. Scutt, 894 F.3d 721, 740 (6th Cir. 2018) (internal quotation marks omitted); see also Stevens, 68 F.4th at 933 (recognizing that "mere disagreements between an inmate and prison medical staff over the inmate's proper medical care are insufficient to establish deliberate indifference absent exceptional circumstances") (internal quotation marks and brackets omitted). The Fourth Circuit "has held that treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Stevens, 68 F.4th at 933 (internal quotation marks omitted).

    The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from governmental actions that are "not rationally related to a legitimate nonpunitive purpose or that . . . appear excessive in relation to that purpose." Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015) (internal quotation marks and citations omitted). To state a claim for deliberate indifference to a serious medical need in violation of the Fourteenth Amendment, "a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed." Short v. Hartman, 87 F.4th 593, 611 (4th Cir. 2023). Under this standard, the plaintiff is not

6

required to demonstrate "that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." Id. Instead, "it is enough to show that the defendant acted or failed to act 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" Id. (quoting Farmer, 511 U.S. at 836). Allegations of mere negligence, however, do not suffice. See id. at 611–12 ("To be clear, it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee. Negligence was not enough before, and it is not enough now.") (internal citations omitted).

Applying these principles, the court concludes that Seymour's allegations against the medical defendants fail to state a cognizable claim of deliberate indifference in violation of the Eighth Amendment or the Fourteenth Amendment. Even assuming that Seymour has an opioid use disorder for which he has been prescribed Suboxone by a private physician, his amended complaint does not allege facts sufficient to show that the medical defendants "intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed" or "knew or should have known" that refusing to give him Suboxone "posed an unjustifiably high risk of harm." Id. at 611. Seymour acknowledges that he was informed that he would be added to the healthcare provider's list for treatment, and he does not allege that he received no physical or mental health treatment for his existing medical issues or the symptoms he allegedly experienced after not receiving Suboxone. Nor does he set forth facts sufficient to show that he received constitutionally inadequate treatment. See, e.g., King v. United States, 536 F. App'x 358, 362 (4th Cir. 2013) (explaining that "[t]his standard can be satisfied 'when the need for treatment is obvious' yet prison

7

officials merely provide 'medical care which is so cursory as to amount to no treatment at all'") (quoting McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999)).

Seymour's claim against the medical defendants appears to be based on the fact that they would not give him the same medication prescribed by a doctor prior to his arrest. See Compl. at 6 ("Nurse Lynette Owens took me off my medication that a doctor had me on."); Compl. Attach. at 1 ("[I'm] being denied my medication [Suboxone] because of a field test . . . . [I] came in with a valid prescription from a doctor . . . . Also how can a nurse or nurse practitioner take me off something a [doctor] put me on . . . ."). However, "the Constitution is not a medical code that mandates specific medical treatment," Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996), and neither a convicted prisoner nor a pretrial detainee "enjoy[s] a constitutional right to the treatment of his or her choice," De'Lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013). Courts have recognized that "there is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field," Burton v. Downey, 805 F.3d 776, 785 (7th Cir. 2015), and that the mere "refusal to provide medicine that was prescribed at another facility or by a different doctor does not rise to the level of deliberate indifference," Simon v. LeBlanc, 623 F. App'x 276, 277 (5th Cir. 2015). See also Burton, 805 F.3d at 785 ("We agree with defendants that no reasonable jury could conclude that the failure to prescribe narcotic pain medication or contact a doctor who would prescribe it amounted to deliberate indifference. Surely Burton would have preferred Vicodin to Ultram, or to have seen a doctor who would have prescribed narcotics, but detainees are not entitled to receive 'unqualified access to healthcare.'") (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)); id. at 786 ("[E]vidence that another doctor would have

8

followed a different course of treatment is insufficient to sustain a deliberate indifference claim."); United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011) ("Although an inmate certainly has a right to necessary medical treatment, he does not have a right to demand that the opinion of his pre-imprisonment doctor be permitted to override the reasonable professional judgment of the prison's medical team."); Sheeler v. Counselor Cherry, No. 3:24-cv-00326, 2025 WL 84139, at *4 (M.D. Pa. Jan. 13, 2025) ("At best, Sheeler's complaint demonstrates his disagreement with being denied placement in the MAT Program. Though he may have wished to participate in the MAT Program and obtain Sublocade, his disagreement with the course of action that Defendants took is not enough to state a Section 1983 claim.").

To the extent Seymour challenges the medical defendants' decision not to administer a second drug screen, his disagreement with that decision, standing alone, does not state a claim for deliberate indifference. See Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1137 (10th Cir. 2023) ("For medical professionals, exercising medical judgment and not ordering diagnostic testing . . . represents at most medical malpractice."); Jackson, 775 F.3d at 178 ("Though hindsight suggests that Lightsey's treatment decisions may have been mistaken, even gravely so, we agree with the district court that Jackson's claim against Lightsey is essentially a disagreement between an inmate and a physician over the inmate's proper medical care, and we consistently have found such disagreements to fall short of showing deliberate indifference.") (internal quotation marks and brackets omitted).

For these reasons, the court concludes that the amended complaint, as currently drafted, fails to state an Eighth or Fourteenth Amendment claim of deliberate indifference against the medical defendants. Consequently, the court will grant the medical defendants'

9

motion to dismiss and dismiss the claims against them without prejudice to filing a second amended complaint.

**B.     Jail Authority**

Seymour also filed suit against the jail authority. "Regional jail authorities and other '[l]ocal governing . . . bodies can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" Thacker v. SWVRJA-Duffield, No. 7:22-cv-00226, 2022 WL 2003583, at *1 (W.D. Va. June 6, 2022) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1979)). "To hold a [municipal entity] liable for a constitutional violation under § 1983, a plaintiff must show that the execution of a policy or custom of the [municipal entity] caused the violation." Misjuns v. City of Lynchburg, 139 F.4th 378, 384 (4th Cir. 2025). In the absence of an underlying constitutional violation, there is no basis for liability under § 1983 against a jail authority or other municipal entity. See Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999) ("As there are no underlying constitutional violations by any individual, there can be no municipal liability.").

Although it is not entirely clear from the amended complaint, it appears that Seymour seeks to hold the jail authority responsible for the decision to deny him Suboxone. Because he has not alleged facts sufficient to show that the decision violated his constitutional rights, the amended complaint fails to state a claim against the jail authority. Id.; see also Evans v. Chalmers, 703 F.3d 636, 654 (4th Cir. 2012) (explaining that claims of supervisory liability and

10

municipal liability "require a predicate constitutional violation to proceed"). Thus, the court will grant the jail authority's motion to dismiss.

### IV. Conclusion

For the reasons stated, the motions to dismiss filed by the jail authority and the medical defendants, ECF Nos. 40 and 42, are **GRANTED**. Because Seymour may be able to remedy the pleading deficiencies identified above, the court will dismiss the amended complaint without prejudice and afford him the opportunity to file a second amended complaint within 30 days.[2] An appropriate order will be entered.

Entered: August 19, 2025

Michael F. Urbanski
U.S. District Judge
2025.08.19 16:54:54
-04'00'

Michael F. Urbanski
Senior United States District Judge

---

[2] If Seymour chooses to file a second amended complaint, he should indicate what treatment, if any, he was offered at the jail for his substance abuse issues and withdrawal symptoms; why the medical defendants' treatment decisions were not adequate to address his medical needs; whether the medical defendants were made aware of his mental health complaints or other specific symptoms of withdrawal; what further steps, if any, were taken in response to his complaints and symptoms; and what policy or custom he believes violated his constitutional rights.